## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | CASE NO. 12-MD-02311 HON. MARIANNE O. BATTANI |
| In Re: INSTRUMENT PANEL CLUSTERS | |
| THIS RELATES TO: ALL DIRECT PURCHASER ACTIONS | 2:12-cv-00201-MOB-MKM |

### DIRECT PURCHASER PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH YAZAKI DEFENDANTS AND FOR AUTHORIZATION TO USE A PORTION OF THE SETTLEMENT PROCEEDS TO PAY FOR LITIGATION EXPENSES

Direct Purchaser Plaintiff hereby moves the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlement with Defendants Yazaki Corporation and Yazaki North America, Inc. (collectively, "Yazaki"), and for authorization to use a portion of the settlement proceeds for Plaintiff's litigation expenses. In support of this motion, Plaintiff relies upon the accompanying brief, which is incorporated by reference herein. Yazaki consents to this motion.

DATED: January 16, 2018

Respectfully submitted,

/s/David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
FINK + ASSOCIATES LAW
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107
Telephone: (215) 238-1700

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Class Counsel and Settlement Class Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | CASE NO. 12-MD-02311 HON. MARIANNE O. BATTANI |
| In Re: INSTRUMENT PANEL CLUSTERS | |
| THIS RELATES TO: ALL DIRECT PURCHASER ACTIONS | 2:12-cv-00201-MOB-MKM |

**BRIEF IN SUPPORT OF DIRECT PURCHASER**
**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF**
**PROPOSED SETTLEMENT WITH YAZAKI DEFENDANTS AND FOR**
**AUTHORIZATION TO USE A PORTION OF THE SETTLEMENT**
**PROCEEDS TO PAY FOR LITIGATION EXPENSES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

STATEMENT OF ISSUES PRESENTED ..................................................... vii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ....... viii

INTRODUCTION............................................................................................ 1

I.     BACKGROUND ................................................................................. 1

II.    TERMS OF THE SETTLEMENT AGREEMENT ............................ 3

III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ............... 5

       A.     The Governing Standards for Final Approval. ................................. 5

       B.     The Proposed Settlement is Fair, Reasonable, and Adequate. ......... 7

              1.     The Likelihood of Plaintiff's Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval. ........... 8

              2.     The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval. ........ 10

              3.     The Judgment of Experienced Counsel Supports Approval. ............. 11

              4.     The Amount of Discovery Completed Is Sufficient. ........................... 12

              5.     The Reaction of Class Members. ........................................................ 12

              6.     The Settlement is the Product of Arm's-Length Negotiations. .......... 13

              7.     The Settlement is Consistent with the Public Interest. ..................... 13

IV.    NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS ............ 13

VI.    CERTIFICATION OF THE PROPOSED DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE ............... 17

       A.     The Proposed Direct Purchaser Yazaki Settlement Class Satisfies Rule 23(a). ................ 17

              1.     The Settlement Class is Sufficiently Numerous. ............................... 18

              2.     There are Common Questions of Law and Fact. ................................ 18

              3.     Plaintiff's Claims are Typical of Those of the Settlement Class. ......... 19

              4.     Plaintiff Will Fairly and Adequately Protect the Interests of the Class. ................ 20

i

**B.**     **Plaintiff's Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.** ........................................................ 21

    **1.**     **Common Legal and Factual Questions Predominate.** ......................... 21

    **2.**     **A Class Action is Superior to Other Methods of Adjudication.** ......... 23

**VII.**   **CONCLUSION** .................................................................................................... 24

## TABLE OF AUTHORITIES

Cases

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)..................................................................................... 17, 21, 23
*Barry v. Corrigan*,
 79 F. Supp 3d 712 (E.D. Mich. 2015)................................................................. 18, 20
*Beattie v. CenturyTel, Inc.*,
 511 F.3d 554 (6th Cir. 2007) ................................................................................ 22
*Carson v. Am. Brands, Inc.*,
 450 U.S. 79 (1981)................................................................................................ 7
*Date v. Sony Electronics, Inc.*,
 No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)................................... 11, 18, 20
*Davidson v. Henkel Corp.*,
 302 F.R.D. 427 (E.D. Mich. 2014) ........................................................................ 18
*Dick v. Sprint Commc'ns*,
 297 F.R.D. 283 (W.D. Ky. 2014)............................................................................ 5, 6
*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*,
 No. 10-cv-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ........................... 19
*Ford v. Fed.-Mogul Corp.*,
 No. 2:09-CV-14448, 2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ........................... 8, 11
*Grenada Invs., Inc. v. DWG Corp.*,
 962 F.2d 1203 (6th Cir.1992) ............................................................................... 8, 13
*Griffin v. Flagstar Bancorp, Inc.*,
 No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ............................. passim
*Hoving v. Lawyers Title Ins. Co.*,
 256 F.R.D. 555 (E.D. Mich. 2009) ....................................................................... 21
*In re Am. Med. Sys., Inc.*,
 75 F.3d 1069 (6th Cir. 1996) ............................................................................... 19
*In re Auto. Refinishing Paint Antitrust Litig.*,
 617 F. Supp.2d. 336 (E.D. Pa. 2007) .................................................................... 5
*In re Cardizem CD Antitrust Litig*,
 200 F.R.D. 297 (E.D. Mich. 2007) ....................................................................... 23
*In re Cardizem CD Antitrust Litig.*,
 218 F.R.D. 508 (E.D. Mich. 2003) ........................................................................ passim
*In re Chocolate Confectionary Antitrust Litig.*,
 No. 1:08–MDL–1935, 2011 WL 6981200 (M.D. Pa. Dec. 12, 2011).......................... 16
*In re Corrugated Container Antitrust Litig.*,
 556 F. Supp. 1117 (S.D. Tex. 1982) ..................................................................... 15
*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
 No. 3:08–MD01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010)........................... 5
*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) .............. 11

*In re Flat Glass Antitrust Litig.,*
  191 F.R.D 472 (W.D. Pa. 1999) ................................................................... 19
*In re Flonase Antitrust Litig.,*
  284 F.R.D. 207 (E.D. Pa. 2012)................................................................... 24
*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y.2004) ................................................................. 12
*In re Insurance Brokerage Antitrust Litig.,*
  297 F.R.D. 136 (E.D. Pa. 2013).................................................................. 14
*In re Linerboard Antitrust Litig.,*
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................... 4, 10, 15
*In re NASDAQ Market-Makers Antitrust Litig.,*
  169 F.R.D. 493 (S.D.N.Y 1996) ................................................................. 24
*In re Packaged Ice Antitrust Litig.,*
  No. 08-MD-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ....................... 12
In re Packaged Ice Antitrust Litig.,
  No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)................................. passim
*In re Polyurethane Foam Antitrust Litig.,*
  No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ......................... 8
*In re Pressure Sensitive Labelstock Antitrust Litig.,*
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ......................................................... 16
*In re Scrap Metal Antitrust Litig.,*
  527 F.3d 517 (6th Cir. 2008) ............................................................... 21, 22
*In re Southeastern Milk Antitrust Litig.,* 2:07- CV-208,
  2013 WL 2155379 (E.D. Tenn. May 17, 2013)................................................... 5
*In re Southeastern Milk Antitrust Litig.,*
  No. 2:07-CV-208, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010)........................... 22
*In re Telectronics Pacing Sys. Inc.,*
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................... 7, 12
*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
  722 F.3d 838 (6th Cir. 2013) ........................................................ 17, 18, 20
*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.,*
  No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)................. 7, 13, 17, 20
*IUE-CWA v. General Motors Corp.,*
  238 F.R.D. 583 (E.D. Mich. 2006) ........................................................ 6, 8, 9
*Lessard v. City of Allen Park,*
  372 F. Supp. 2d 1007 (E.D. Mich. 2005)....................................................... 6
*Marsden v. Select Medical Corp.,*
  246 F.R.D. 480 (E.D. Pa. 2007)................................................................. 18
*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950)............................................................................... 14
*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.,*
  234 F.R.D. 627 (W.D. Ky. 2006)............................................................... 6
*Newby v. Enron Corp.,*
  394 F.3d 296 (5th Cir. 2004) ................................................................... 16
*Olden v. Gardner,*
  294 Fed. Appx. 210 (6th Cir. 2008)........................................................... 6

*Paper Systems Inc. v. Mitsubishi Corp.*,
    193 F.R.D. 601 (E.D. Wisc. 2000)............................................................................ 23
*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) .................................................................................... 20
*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)................................ passim
*Sheick v. Automotive Component Carrier LLC*,
    No. 2:09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 02, 2010)........................................... 20
*Sims v. Pfizer, Inc.*,
    No. 1:10-CV-10743, 2016 WL 772545 (E.D. Mich. Feb. 24, 2016)........................................ 6
*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ............................................................................ 17, 18, 20
*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011).......................................................................................... 7
*Thacker v. Chesapeake Appalachia, LLC*,
    259 F.R.D. 262 (E.D. Ky. 2009).................................................................................... 17
*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ................................................................................... passim
*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ....................................................................................... 7
*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ............................................................................ 6, 10, 11
*WorldCom, Inc. Sec. Litig.*, 02 CIV 3288 (DLC),
    2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ................................................................... 16

Statutes

28 U.S.C. § 1715 .................................................................................................................. 2

Rules

Fed. R. Civ. P. 23(a)(2) .................................................................................................. 18, 19
Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................... 14
Fed. R. Civ. P. 23(e)(1) ........................................................................................................ 13
Fed. R. Civ. P. 23(e)(2) ...................................................................................................... 7, 8
Fed. R. Civ. P. 23(a) ....................................................................................................... 17, 21
Fed. R. Civ. P. 23(a)(1) ....................................................................................................... 18
Fed. R. Civ. P. 23(a)(3) .................................................................................................. 19, 20
Fed. R. Civ. P. 23(a)(4) .................................................................................................. 20, 21
Fed. R. Civ. P. 23(b) ....................................................................................................... 17, 21
Fed. R. Civ. P. 23(b)(3) ....................................................................................... 14, 17, 21, 23
Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................... 14
Fed. R. Civ. P. 23(c)(3) ......................................................................................................... 14
Fed. R. Civ. P. 23(e) ............................................................................................................. 13
Fed. R. Civ. P. 23(g) ............................................................................................................. 21

Other Authorities

4 *NEWBERG ON CLASS ACTIONS*, § 18.05 ............................................................................... 19
*Manual for Complex Litigation, Fourth* §13.21 (2004) ................................................................ 15

## STATEMENT OF ISSUES PRESENTED

1.      Whether the proposed settlement between the Direct Purchaser Plaintiff and Defendants Yazaki Corporation and Yazaki North America (collectively, "Yazaki" or the "Yazaki Defendants"), as set forth in the Settlement Agreement between the Direct Purchaser Plaintiff and Yazaki, is fair, reasonable and adequate, and whether the Court should approve the settlement under Fed. R. Civ. P. 23.

2.      Whether the Court should certify the Yazaki Settlement Class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for purposes of the settlement only.

3.      Whether the Court should approve Settlement Class Counsel's request to use up to 20% of the Yazaki Settlement Fund to pay Plaintiff's litigation expenses.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
     521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497 (E.D. Mich.
     June 20, 2016)

*Date v. Sony Electronics, Inc.*,
     No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.,*
     No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
     218 F.R.D. 508 (E.D. Mich. 2003)

*In re Packaged Ice Antitrust Litig.*,
     No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
     No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
     527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
     722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
     No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
     No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
     133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
     137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
     497 F.3d 615 (6th Cir. 2007)

## INTRODUCTION

Plaintiff, on behalf of a Settlement Class composed of direct purchasers of Instrument Panel Clusters in the United States, has reached a settlement with the Yazaki Defendants. Under the terms of the proposed settlement (2:12-cv-00201-MOB-MKM, Doc. No. 168-1 at ¶ 11), Yazaki will pay $7,700,000 ("Settlement Amount") to the members of the Yazaki Settlement Class and provide cooperation to assist in the prosecution of the claims against the remaining Defendants.[1]

For the reasons set forth herein, Direct Purchaser Plaintiff respectfully submits that the proposed settlement is fair, reasonable and adequate, and should be approved by the Court. Submitted herewith is a proposed Order and Final Judgment agreed to by Direct Purchaser Plaintiff and Yazaki.

## I.      BACKGROUND

On February 8, 2012, Plaintiff filed a class action lawsuit against Yazaki on behalf of a class of direct purchasers of Instrument Panel Clusters, alleging that Yazaki engaged in a continuing conspiracy to rig bids and fix, raise, maintain, or stabilize prices at supra-competitive levels for Instrument Panel Clusters sold in the United States. Plaintiff further alleged that the proposed class paid artificially inflated prices for Instrument Panel Clusters and suffered antitrust injury to their business or property in violation of the federal antitrust laws.

On January 15, 2013, Plaintiff filed a Consolidated Class Action Complaint, which named Nippon Seiki and Denso as additional defendants. (2:12-cv-00201-MOB-MKM, Doc. No. 48). Defendants moved to dismiss the Consolidated Class Action Complaint on March 26, 2013, which motion was denied by the Court on April 30, 2014. (2:12-cv-00201-MOB-MKM, Doc. Nos. 61

---

[1] The Settlement Amount is subject to reduction based on valid and timely requests for exclusion by members of the Yazaki Settlement Class. (2:12-cv-00201-MOB-MKM, Doc. No. 168-1 at ¶¶ 11, 25-26).

and 86).   On February 25, 2015, after obtaining leave of court, Plaintiff filed the Second

Consolidated Class Action Complaint, which added the Continental Defendants.

On March 21, 2017, the Court preliminarily approved the proposed Yazaki settlement and

provisionally certified a Direct Purchaser Yazaki Settlement Class, defined as follows:

> All direct purchasers of motor vehicle Instrument Panel Clusters in
> the United States directly from any of the Defendants (or their
> controlled subsidiaries, affiliates or joint ventures) from January 1,
> 1998 through December 27, 2016.

2:12-cv-00201-MOB-MKM, Doc. No. 170 (the "Preliminary Approval Order").[2]

By Order dated November 29, 2017, the Court authorized dissemination of notice of the

proposed Yazaki settlement to members of the Yazaki Settlement Class.  (2:12-cv-00201, Doc.

No. 178) (the "Notice Dissemination Order").

Pursuant to the Notice Dissemination Order, on December 13, 2017, 318 copies of the

Notice were mailed, postage prepaid, to all potential Settlement Class members identified by

Defendants.  A Summary Notice of Proposed Settlement of Direct Purchaser Class Action with

Yazaki Defendants and Hearing on Settlement Approval (the "Summary Notice") was published

in the national edition of *The Wall Street Journal* and in *Automotive News* on December 18, 2017.

In   addition,   a   copy   of   the   Notice   was   (and   remains)   posted   on-line   at

www.autopartsantitrustlitigation.com.[3]

---

[2] For purposes of the Settlement Class definition, the Defendants are:  Yazaki Corporation;
Yazaki North America, Inc.; Continental Automotive Electronics LLC; Continental Automotive
Korea Ltd.; Continental Automotive Systems, Inc.; Denso Corporation; Denso International
America, Inc.; Nippon Seiki Co., Ltd.; N.S. International Ltd.; and New Sabina Industries, Inc.
(2:12-cv-00201-MOB-MKM, Doc. No. 170).

[3] Counsel for the Yazaki Defendants have informed Settlement Class Counsel that Yazaki
fulfilled its obligations under 28 U.S.C. § 1715 (the "Class Action Fairness Act of 2005").
("CAFA"), by disseminating the requisite CAFA notice to the appropriate federal and state
officials on March 15, 2017.

The deadline for submission of objections to the proposed settlement, and for requests for exclusion from the Settlement Class, is February 5, 2018.

## II.   TERMS OF THE SETTLEMENT AGREEMENT

Plaintiff, on behalf of the Yazaki Settlement Class, has entered into a settlement with Yazaki dated December 27, 2016 under which Yazaki agreed to pay $7,700,000 (2:12-cv-00201-MOB-MKM, Doc. No. 168-1 at ¶ 11).[4]

In addition to the cash payment, the proposed settlement requires Yazaki to cooperate with Plaintiff in the ongoing prosecution of the litigation against the Continental and Denso Defendants (hereinafter "Non-Settling Defendants")[5] by providing an attorney proffer of facts known to them regarding documents, witnesses, meetings, communications, agreements with competitors, events, background information and any other relevant topics not covered by privilege or other protections available under any applicable statute of United States law.  Further, Yazaki's counsel will make itself available for reasonable follow-up discussions and will, in good faith, consider requests for new or additional documents.  Upon reasonable written request from Settlement Class Counsel, Yazaki agreed to provide an affidavit or declaration attesting to information provided by Yazaki's counsel during the aforementioned attorney proffer.

---

[4] The Settlement Amount of $7,700,000 is subject to reduction based on valid and timely requests for exclusion by members of the Yazaki Settlement Class, in accordance with the terms set forth in a confidential letter agreement between Yazaki and the Settlement Class.  The confidential letter will be provided to the Court for *in camera* review upon its request.  The precise amount of any reduction will not be known until after the February 5, 2018 deadline for members of the Yazaki Settlement Class to exclude themselves from the settlement.  Settlement Class Counsel will advise the Court of the reduction amount, if any, at least ten (10) days prior to the March 12, 2018 final approval hearing.  It should be noted that irrespective of the number of opt-outs, the final Settlement Amount will not be less than $2,500,000.

[5] Previously, the Court approved a $5.25 million settlement with Nippon Seiki.

Moreover, Yazaki agrees to produce through affidavit(s) or declaration(s) and/or at trial, in Settlement Class Counsel's discretion, a representative qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence any of Yazaki's documents and transactional data produced or to be produced, and to the extent possible, any documents produced by other defendants or a third-party.  (2:12-cv-00201-MOB-MKM, Doc. No. 168-1 at ¶¶ 32-35).  As stated in *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003), such cooperation provisions provide a "substantial benefit" to the class and "strongly militate[] toward approval of the Settlement Agreement."  This cooperation will enhance and strengthen Direct Purchaser Plaintiff's prosecution of their claims against the Non-Settling Defendants.

In exchange for the settlement payment and cooperation, the proposed settlement provides, *inter alia,* for the release by Direct Purchaser Plaintiff and other members of the Settlement Class of "Released Claims" against Yazaki and other "Releasees" (as defined in the Settlement Agreement) (2:12-cv-00201-MOB-MKM, Doc. No. 168-1 at ¶ 6).  The Released Claims are antitrust and similar claims arising from the conduct alleged in the Complaint.  The release specifically excludes certain claims against Yazaki, including: claims based upon indirect purchases of Instrument Panel Clusters; negligence, personal injury, and product defect claims; and claims relating to purchases of Instrument Panel Clusters outside the United States.  (2:12-cv-00201-MOB-MKM, Doc. No. 168-1 at ¶ 21).

Moreover, Yazaki's sales to Settlement Class members remain in the case as a potential basis for joint-and-several liability and damages against other current or future Defendants in the litigation.  (2:12-cv-00201-MOB-MKM, Doc. No. 168-1 at ¶ 45).  Plaintiff is continuing to prosecute its claims against the Non-Settling Defendants.

Plaintiff believes that the proposed settlement is fair, reasonable and adequate to the Settlement Class. The Settlement Agreement was consummated only after arms-length negotiations between experienced and sophisticated counsel. It is the result of good faith negotiations, after factual investigation and legal analysis by experienced counsel, and is based upon the attorneys' full understanding of the strengths and weaknesses of their respective positions.

Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Commc'ns*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate.") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07- CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp.2d 336, 341 (E.D. Pa. 2007).

As discussed herein, because the proposed Yazaki settlement was negotiated at arm's length by experienced counsel knowledgeable about the facts and the law, and is fair, reasonable, and adequate, Direct Purchaser Plaintiff respectfully submits that it merits final approval.

## III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A. The Governing Standards for Final Approval.

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497, at 11 (E.D. Mich. June 20, 2016) (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec.

12, 2013). *Accord UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007) (federal policy favors settlement of class actions); *Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016).

A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

A court has broad discretion in deciding whether to approve a class action settlement. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 636 (6th Cir. 2007). In exercising this discretion, courts give considerable weight and deference to the views of experienced counsel as to the merits of an arm's-length settlement. *Dick*, 297 F.R.D. at 297 ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation."). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that a judge reviewing a settlement should not "substitute his or her judgment for that of the litigants and their counsel." *IUE-CWA v. General Motors Corp.*, 238

F.R.D. 583, 593 (E.D. Mich. 2006). In light of the uncertainties and risks inherent in any litigation, courts take a common-sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick,* 2010 WL 4136958, at *15 (citation omitted). Moreover, a district court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

**B.      The Proposed Settlement is Fair, Reasonable, and Adequate.**

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and on finding that the settlement is "fair, reasonable, and adequate." *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011). Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues, so the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1008-09 (S.D. Ohio 2001) (citing *Manual (Third)* §30.42). This is particularly true in the case of class actions.

Courts in the Sixth Circuit have identified a number of factors that are relevant in determining whether a settlement is fair, reasonable and adequate: (1) the likelihood of success on

the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8. *Accord Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 10; *UAW v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), *appeal dismissed* (Dec. 4, 2015). No single factor is dispositive. When evaluating the fairness of a settlement, the court may weigh each factor based on the circumstances of the case, *Ford*, 2006 WL 1984363, at *21, and may "choose to consider only those factors that are relevant to the settlement at hand. *Id.* at *22. *See also Grenada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205–06 (6th Cir.1992) (district court enjoys wide discretion in assessing the weight and applicability of factors). As discussed more fully below, the Yazaki settlement is fair, reasonable, and adequate under the relevant criteria, and should be approved under Rule 23(e)(2).

### 1. The Likelihood of Plaintiff's Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement Supports Approval.

When considering the fairness of a class action settlement, a court should assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick,* 2010 WL 4136958, *15 (quoting *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *Ford v. Fed.-Mogul Corp.*, No. 2:09-CV-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015).

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631.  In assessing the parties' dispute and weighing the likelihood of plaintiff's success on the merits if the litigation continues against the benefits of the settlement, the ultimate question for the court is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued.  *Sheick,* 2010 WL 4136958, at *16 (citing *IUE–CWA*, 238 F.R.D. at 595).

The settlement provides an excellent result for the Settlement Class in light of the substantial risks of continuing litigation.  In negotiating the settlement, Settlement Class Counsel took into account the evidence supporting Direct Purchaser Plaintiff's claims, the dollar volume of Yazaki's Instrument Panel Clusters sales, the defenses that Yazaki raised or was expected to raise, and the substantial value provided by Yazaki's agreement to cooperate with Direct Purchaser Plaintiff in the continued prosecution of its claims against the Non-Settling Defendants.

Plaintiff is optimistic about the likelihood of ultimate success in this matter against all the Defendants, but success is not certain.  As this Court has observed, success is not guaranteed even in those instances where a settling defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice, which is not required to prove class-wide impact or damages, both of which require complex, risky and expensive expert analyses.  *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11.

Yazaki is represented by highly experienced and competent counsel, and Plaintiff believes that it was prepared to defend this case through trial and appeal, if necessary.  Litigation risk is inherent in any litigation, and this is particularly true with respect to class actions.  So, while it is optimistic about the outcome of this litigation, Plaintiff must acknowledge the risk that Yazaki

could prevail with respect to certain legal or factual issues, which could result in reducing or eliminating any potential recovery.

These risks must be weighed against the settlement consideration: $7,700,000 in cash prior to a possible reduction for valid and timely opt-outs, together with substantial cooperation by Yazaki, which is valuable to the Settlement Class members as they continue to litigate against the Continental and Denso Defendants. *See, e.g.*, *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11 ("Of great importance in the Court's assessment is the provision in the Settlements requiring discovery cooperation of certain Settling Defendants."). Cooperation is a "substantial benefit" to the class when settling with less than all defendants. *Linerboard*, 292 F. Supp. 2d at 643. The cooperation to be provided by Yazaki under the Settlement Agreement provides just such a substantial benefit to the class. *See In re Packaged Ice Antitrust Litig.,* No. 08-MD–1952, 2011 WL 717519 at *10 (E.D. Mich. Feb. 22, 2011).

Settlement Class Counsel believe that the settlement is an excellent result. Weighing the settlement's benefits against the risks of continued litigation tilts the scale toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice*, 2011 WL 717519, at *9.

### 2. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (*quoting Vukovich*, 720 F.2d at 922. "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

Plaintiff is still litigating with the Non-Settling Defendants, so it would be imprudent to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation because the Non-Settling Defendants could then use such disclosures against Plaintiff going forward. Settlement Class Counsel believe it is sufficient at this point to state that complex antitrust litigation of this scope has inherent risks that the settlement at least partially negates.

The proposed settlement eliminates the risks, expense, and delay that would otherwise exist with respect to a recovery from Yazaki, ensures a substantial payment to the Settlement Class, and provides the Settlement Class with cooperation that will be used to pursue the claims against the Non-Settling Defendants.  This factor also supports final approval of the proposed settlement.

### 3.     The Judgment of Experienced Counsel Supports Approval.

In deciding whether to approve a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'"  *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9.  "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'"  *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23.

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation.  They have represented the direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation*, and negotiated this settlement at arm's

11

length with well-respected and experienced counsel for Yazaki.  Settlement Class Counsel believe the proposed settlement is an excellent result.

### 4.    The Amount of Discovery Completed Is Sufficient.

Settlement Class Counsel have had access to relevant information about the Instrument Panel Clusters conspiracy through the production and review of documents, as well as proffers of information.  Relevant information also was obtained from the related criminal litigation, and through Settlement Class Counsel's investigation.[6]  The information from these sources and their factual and legal analysis allowed Settlement Class Counsel to evaluate not only the strengths and weaknesses of the legal case, but also the potential value of the promised cooperation.  Based on this information, Settlement Class Counsel believe that the proposed settlement with Yazaki is fair, reasonable, and in the best interests of the Settlement Class, and their opinion supports final approval of the settlement.

### 5.    The Reaction of Class Members.

The Court cannot yet assess this factor.  But even if there were to be some objections, their "existence… does not mean that the settlement is unfair." *Telectronics,* 137 F. Supp. 2d at 1018. A "scarcity of objections – relative to the number of class members overall – indicates broad support for the settlement among Class Members." *Sheick*, 2010 WL 4136958 at *22; *accord In re Cardizem,* 218 F.R.D. at 527.  Settlement Class Counsel will submit to the Court a report on

---

[6] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor.  *Packaged Ice*, 2010 WL 3070161, at *5-6.  The "question is whether the parties had adequate information about their claims."  *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y.2004)).  *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011) (absence of formal discovery not an obstacle to settlement approval).

objections or opt-outs, if any, after the February 5, 2018 deadlines, and prior to the Fairness Hearing, which is scheduled for March 12, 2018.

### 6.    The Settlement is the Product of Arm's-Length Negotiations.

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick,* 2010 WL 4136958, at *19-20. Settlement Class Counsel have extensive experience in handling class action antitrust cases and other complex litigation, and they negotiated at arm's length with counsel for Yazaki. Consideration of this factor fully supports final approval of the settlement as well.

### 7.    The Settlement is Consistent with the Public Interest.

 "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. Plaintiff submits that there is no countervailing public interest that provides a reason to disapprove the proposed settlement. *Griffin*, 2013 WL 6511860, at *5. This factor also supports approval.

Consideration of the above factors supports final approval of the proposed Yazaki settlement. Settlement Class Counsel respectfully submit that the proposed settlement is in the best interests of the Settlement Class and should be approved.

## IV.    NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS

Fed. R. Civ. P. 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the

settlement proposed and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). *Accord In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (E.D. Pa. 2013).

For class actions certified under Rule 23(b)(3), the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.*

The notice program and forms of notice utilized by Plaintiff satisfies these requirements.[7] The Notice sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1), and also apprises Settlement Class members that Direct Purchaser Plaintiff will seek permission from the Court to use a portion of the settlement funds to pay litigation expenses.

Pursuant to the Notice Dissemination Order, on December 13, 2017, 318 copies of the Notice were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants. The Summary Notice was published in the national edition of *The Wall Street Journal*

---

[7] The proposed notice program and forms of notice have been approved by the Court in connection with numerous settlements, including in the *Wire Harness Litigation* (2:12-cv-00101, Doc. Nos. 162, 320, 474), in *Instrument Panel Clusters* (2:12-cv-00201-MOB-MKM, Doc. No. 91) and in *Occupant Safety Systems* (2:12-cv-00601, Doc. Nos. 97, 116).

and in *Automotive News* on December 18, 2017.  In addition, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[8]

The content and method for dissemination of notice fulfill the requirements of Federal Rule of Civil Procedure 23 and due process.  *See Packaged Ice*, 2011 WL 717519, at *5.

## V.   ALLOWING SETTLEMENT CLASS COUNSEL TO USE UP TO 20% OF THE SETTLEMENT PROCEEDS FOR LITIGATION EXPENSES IS APPROPRIATE

In view of the ongoing litigation against the remaining Defendants, Settlement Class Counsel request that they be permitted to use a portion of the Yazaki settlement proceeds to pay Plaintiff's expenses in the Instrument Panel Clusters litigation.

The Notice expressly informs members of the Settlement Class that counsel will request that they be permitted to use up to 20% of the Yazaki settlement proceeds to pay Plaintiff's litigation expenses, including costs for experts, depositions, document reproduction and review, and other costs incurred in prosecuting this case.  Notice, Exhibit 1, at 3.

Neither Settlement Class Counsel's request, nor the granting of such a request, is unusual. Indeed, the *Manual for Complex Litigation, Fourth* §13.21 (2004), provides that "partial settlements may provide funds needed to pursue the litigation…."  *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *13-14 (approving class counsel's request to use proceeds from early settlement to pay litigation expenses); *Linerboard,* 292 F. Supp. 2d at 643 (noting that a partial "settlement provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants"); *In re Corrugated Container Antitrust Litig.,* 556 F. Supp. 1117, 1146 (S.D. Tex. 1982) ("the nonrefundable amount of $187,500 made available to

---

[8] Consistent with the Notice Dissemination Order, a Declaration or Affidavit confirming that notice to the Settlement Class was disseminated in accordance with the Order will be filed at least 10 days prior to the Fairness Hearing.  (2:12-cv-00201 -MOB-MKM, Doc. No. 178 at ¶ 11).

plaintiffs by this settlement provided a substantial sum to help defray plaintiffs' expenses at a time when their trial preparation costs were mounting rapidly").

Numerous other courts have granted requests to use a portion of settlement proceeds for the continued prosecution of litigation.  For example, in *Newby v. Enron Corp.,* 394 F.3d 296, 302-03 (5th Cir. 2004), the Fifth Circuit affirmed an order providing for the establishment of a $15 million litigation expense fund from the proceeds of a partial settlement.  In *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08–MD–1935, 2011 WL 6981200, at *3 (M.D. Pa. Dec. 12, 2011), the court authorized plaintiffs to utilize the settlement fund to pay "such expenses as may reasonably be incurred in the prosecution of the Class Action."   In *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008), the court approved class counsel's request for an award of $500,000 to pay outstanding and future litigation costs.  *See also In re WorldCom, Inc. Sec. Litig.,* 02 CIV 3288(DLC), 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) (creating a $5 million fund for the continuation of the litigation against the non-settling defendants).

This Court has previously approved similar requests in this litigation (*Instrument Panel Clusters* (2:12-cv-00201, Doc. No. 109), and in the *Wire Harness Litigation* (2:12-cv-00101, Doc. Nos. 232, 400), *Occupant Safety Systems* (2:12-cv-00601, Doc. No. 111), and the Bearings Litigation (2:12-cv-00501, Doc. No. 289).  Settlement Class Counsel respectfully request that they be permitted to use up to 20% of the Yazaki settlement proceeds for the payment of litigation expenses.

## VI. CERTIFICATION OF THE PROPOSED DIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENT IS APPROPRIATE

In the Preliminary Approval Order, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of the proposed Yazaki settlement, the following Settlement Class:

> All direct purchasers of motor vehicle Instrument Panel Clusters in the United States directly from any of the Defendants (or their controlled subsidiaries, affiliates or joint ventures) from January 1, 1998 through December 27, 2016.

2:12-cv-00201-MOB-MKM, Doc. No. 170.

It is well established that a class may be certified for purposes of settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 24; *Cardizem,* 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[9]

As demonstrated below, the Settlement Class meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

### A. The Proposed Direct Purchaser Yazaki Settlement Class Satisfies Rule 23(a).

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

---

[9] The Preliminary Approval Order (2:12-cv-00201-MOB-MKM, Doc. No. 170) provides that provisional certification of the Settlement Class will be without prejudice to the rights of any defendants to contest certification of any other class proposed in these coordinated actions. *See Packaged Ice*, 2011 WL 717519, at *7.

of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

### 1.  The Settlement Class is Sufficiently Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason.  *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity).  *See also Davidson v. Henkel Corp.,* 302 F.R.D. 427, 441 (E.D. Mich. 2014) (noting it is generally accepted that class of 40 or more members is sufficient to satisfy the numerosity requirement).  Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, copies of the Notice were mailed to 318 entities, geographically dispersed throughout the United States, that have been identified by Defendants as potential direct purchasers of Instrument Panel Clusters.  Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2.  There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."  "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, if "the resolution of [that common issue] will advance the litigation."  *Sprague*, 133 F.3d at 397.  *Accord Barry v. Corrigan*, 79 F. Supp 3d

712,731 (E.D. Mich. 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, No. 10-cv-10620, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS, § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered into an agreement to artificially fix prices of Instrument Panel Clusters is a factual question common to all members of the Settlement Class because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 25. Common legal questions include whether, if such an agreement was reached, Defendants violated the antitrust laws and the impact on Class members. *Packaged Ice*, 2011 WL 717519, at *6 (commonality requirement satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members"). "Indeed, consideration of the conspiracy issue would, of necessity focus on defendants' conduct, not the individual conduct of the putative class members." *Flat Glass*, 191 F.R.D. at 484. Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.    Plaintiff's Claims are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of

legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399).  Here, Plaintiff's claims arise from the same course of conduct as the claims of the other Settlement Class members: the Defendants' alleged violations of the antitrust laws.  Plaintiff and the other members of Settlement Class are proceeding on the same legal claim, alleged violations of Section 1 of the Sherman Antitrust Act.  *See UAW*, 497 F. 3d at 625; *Barry v. Corrigan*, No. 13-cv-13185, 2015 WL 136238, at *13 (E.D. Mich. Jan. 9, 2015).  Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Plaintiff Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class.  "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Automotive Component Carrier LLC,* No. 09–14429, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 02, 2010) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here.  The interests of the proposed representative of the Settlement Class, ACAP, L.L.C., f/k/a Aguirre, Collins & Aikman, LLC, are the same as those of other Settlement Class members.  Plaintiff and the other Settlement Class members claim that they

were injured as a result of the alleged conspiracy, and seek to prove that Defendants violated the antitrust laws. Plaintiff's interests are thus aligned with those of the Settlement Class.

Moreover, Plaintiff has retained qualified and experienced counsel to pursue this action.[10] Settlement Class Counsel vigorously represented Plaintiff and the Settlement Class in the settlement negotiations with the Yazaki Defendants, and have vigorously prosecuted this action. Rule 23(a)(4)'s adequacy requirement is therefore satisfied.

**B. Plaintiff's Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.**

In addition to satisfying Rule 23(a), Plaintiff must show that the proposed class action falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

**1. Common Legal and Factual Questions Predominate.**

Rule 23(b)(3)'s requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive" to warrant certification. *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to

---

[10] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman & Kodroff, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* cases.

individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question. *Scrap Metal*, 527 F.3d at 535; *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 27; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010). Affirming class certification in *Scrap Metal*, the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members'…. Accordingly, the court found that the 'fact of damages' was a question common to the class even if the amount of damages sustained by each individual class member varied." 527 F.3d at 535 (emphasis in original).

In this case the same set of core operative facts and theory of liability apply to each member of the Settlement Class. As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Instrument Panel Clusters is a question common to all Settlement Class members because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6. If Plaintiff and the other members of the Settlement Class were to bring their own individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. Therefore, common proof of Defendants' violations of antitrust law will predominate.

## 2.    A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).   All Instrument Panel Clusters litigation is centralized in this Court.  If a Yazaki Settlement Class member wants to control its own litigation, it can request exclusion from the Yazaki Settlement Class.  Thus, consideration of factors (1) - (3) demonstrates the superiority of a class action.

With respect to factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case because the settlement will end the litigation without a trial.  *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Class is not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."  *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)).  Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the Settlement Class. *E.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class

member's economic injury.")  The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996).  Thus, class litigation is superior to the alternatives in this case.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Yazaki settlement, certify the Settlement Class for purposes of the settlement only and approve the request to use up to 20% of the Yazaki Settlement Fund to pay Plaintiff's litigation expenses.

DATED: January 16, 2018                     Respectfully submitted,


                                             /s/David H. Fink
                                            David H. Fink (P28235)
                                            Darryl Bressack (P67820)
                                            FINK + ASSOCIATES LAW
                                            38500 Woodward Ave, Suite 350
                                            Bloomfield Hills, MI 48304
                                            Telephone: (248) 971-2500

                                            *Interim Liaison Counsel*

| | |
|---|---|
| Steven A. Kanner | Joseph C. Kohn |
| William H. London | William E. Hoese |
| Michael E. Moskovitz | Douglas A. Abrahams |
| FREED KANNER LONDON | KOHN, SWIFT & GRAF, P.C. |
| & MILLEN LLC | One South Broad Street, Suite 2100 |
| 2201 Waukegan Road, Suite 130 | Philadelphia, PA  19107 |
| Bannockburn, IL  60015 | Telephone: (215) 238-1700 |
| Telephone: (224) 632-4500 | |
| | |
| Gregory P. Hansel | Eugene A. Spector |
| Randall B. Weill | William G. Caldes |
| Michael S. Smith | Jonathan M. Jagher |
| PRETI, FLAHERTY, BELIVEAU | Jeffrey L. Spector |
| & PACHIOS LLP | SPECTOR ROSEMAN & KODROFF, P.C. |
| One City Center, P.O. Box 9546 | 1818 Market Street, Suite 2500 |
| Portland, ME  04112-9546 | Philadelphia, PA  19103 |
| Telephone: (207) 791-3000 | Telephone: (215) 496-0300 |

*Interim Co-Lead Class Counsel and Settlement Class Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2018, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

FINK + ASSOCIATES LAW

By: /s/Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com
nfink@finkandassociateslaw.com